HEATHER MARIE PLAINSE,

        Plaintiff,

    v.                                                                Case No. 18-C-1381

ANDREW M. SAUL,
Commissioner of Social Security,

        Defendant.

## DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION

      Plaintiff Heather Plainse filed this action for judicial review of a decision by the Commissioner of Social Security denying her application for a period of disability and disability insurance benefits (DIB) under Title II of the Social Security Act and supplemental security income (SSI) under Title XVI of the Act. Plainse alleged an onset date of June 11, 2014 in her applications. Plainse contends that the administrative law judge's (ALJ) decision is flawed and requires remand for four reasons: (1) the ALJ's residual functional capacity (RFC) assessment did not account for Plainse's severe fatigue and was not assessed on a function-by-function basis; (2) the ALJ's listing discussion that related to Plainse's arthritis only offered a perfunctory analysis; (3) the ALJ failed to give controlling weight to Dr. Koster's opinion; and (4) the vocational expert's (VE) findings are inconsistent with the Dictionary of Occupational Titles (DOT). For the reasons that follow, the Commissioner's decision will be affirmed.

**BACKGROUND**

Plainse filed her applications on February 19, 2015 and listed double outlet right ventricle/hypoplastic left ventricle and juvenile idiopathic arthritis as the conditions that limited her ability to work. R. 12, 330. After her applications were denied, both initially and on reconsideration, Plainse requested a hearing before an ALJ. On July 17, 2017, ALJ Roosevelt Currie conducted a video hearing where Plainse, who was represented by counsel, and a VE testified. R. 33–62.

At the time of the hearing, Plainse was 22 years old. R. 36. Plainse testified that the highest level of education that she had completed was a year of online college courses, and that she was too exhausted and fatigued as a result of her medical conditions to continue the courses. R. 36, 39. Plainse's source of income at the time was a part-time job where she worked 15 hours a week at a Payless Shoes in a position that required her to be standing most of the time. R. 37. Plainse's prior work experience included working as a scheduler at Thrivent Financial, a customer service representative at Planet Fitness, and a cashier and sales associate at Shopko Express. R. 41–42. In general, Plainse worked between 25 to 30 hours a week in these positions but occasionally worked more hours. *Id.* These positions generally required her to sit or stand continuously, which led to her becoming exhausted and stiff, and her conditions resulted in her being absent from work regularly. *Id.* Plainse stated that she limits herself to part-time hours because she becomes too fatigued, stiff, and exhausted if she works more than 15 hours. R. 38. When she does work more than 15 hours, she reported that she needs to lay down for the remainder of the day, and often gets a headache. R. 39, 44.

Regarding her physical conditions, Plainse stated she was diagnosed with juvenile rheumatoid arthritis at the age of two. R. 38–39. She testified that her arthritis causes burning pain in her wrists and fingers, and swelling in her hands along her joints. R. 45. Depending on the day, Plainse stated her arthritis can make it difficult for her to button things, tie her shoes, and use a computer. R. 44–45. Plainse testified that she experiences swelling, soreness, and pain in her knees, legs, and ankles that is brought on by standing for more than 20 minutes or walking more than 15 minutes. R. 48–49. Plainse also stated that cold weather affects her, making her joints ache even more. R. 48. She testified that the pain can wake her up at night if she worked too much on a given day. R. 49.

Plainse is currently prescribed Orencia for her arthritis, which she takes once a week, and she stated that prior medications were no longer effective. R. 46. She indicated that Orencia works for the most part, but as a result of taking the medication she experiences headaches daily or every other day. R. 46–47, 52. Plainse further stated that these headaches can turn into migraines once or twice a week, and that she takes Tylenol to treat them. R. 46–47, 49.

Plainse also suffered a stroke resulting from a blood clot in her heart. She stated that she takes Warfarin as a result and occasionally gets headaches as a side effect of the stroke. R. 49. Plainse reported that she feels sick all of the time with cold-like symptoms and that she has a thyroid condition—for which she takes medication—that results in her feeling fatigued. R. 50, 52. Plainse further testified that, in general, she experiences fatigue and exhaustion as a result of her conditions whenever she works. *See* R. 38–55. Plainse also stated that the pain, fatigue, and exhaustion interfere with her ability to complete activities and focus. R. 51–52.

Regarding her daily activities, Plainse testified that she is often too exhausted and tired to go anywhere and that typically after coming home from work she rests for the remainder of the day. R. 47, 50. Plainse lives with her parents, and she stated her mother does the laundry, cooking, and a majority of the cleaning. Plainse testified that she does dishes occasionally, but not for more than five minutes, and that she does not help carry groceries because they are too heavy. R. 47–48, 51. Plainse also stated that she tries to exercise but finds it too difficult because of her exhaustion. R. 52.

In an twelve-page decision dated August 24, 2017, the ALJ determined that Plainse is not disabled. R. 12–23. The ALJ's decision followed the five-step sequential process for determining disability prescribed by the Social Security Administration (SSA). R. 13–14. At step one, the ALJ concluded that Plainse has not engaged in substantial gainful activity since her June 11, 2014 alleged onset date and that she met the insured status requirements through September 30, 2015. R. 14. At step two, the ALJ concluded that Plainse has the following severe impairments: congenital heart disease and rheumatoid arthritis. R. 15. At step three, the ALJ concluded Plainse did not have an impairment or combination of impairments that met or medically equaled the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 15–16.

Next, the ALJ assessed Plainse's RFC and found that she can perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a), subject to the following limitations:

> The individual can stand/walk for about two hours and sit for up to six hours in an eight-hour workday, with normal breaks; frequently balance, stoop, crouch, kneel, crawl, occasionally climb ramps and stairs; and never climb ladders, ropes or scaffolds. The individual should avoid concentrated exposure to heights, moving machinery, and similar hazards.

R. 17. At step four, the ALJ then concluded, based on the testimony by the VE, that Plainse is unable to perform any past relevant work as a sales associate. R. 21. The ALJ also concluded based on the VE's testimony that Plainse would be able to perform the requirements of the following representative occupations: order clerk and final assembly. R. 22. Accordingly, the ALJ found that Plainse is not disabled. *Id*. The Appeals Council denied Plainse's request for review, making the ALJ's decision the final decision of the Commissioner.

**LEGAL STANDARD**

Judicial review of the decisions of administrative agencies is intended to be deferential. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010). The Social Security Act specifies that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The Supreme Court recently reaffirmed that "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Beistek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The phrase 'substantial evidence,'" the Court explained, "is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Id.* "And whatever the meaning of 'substantial' in other contexts," the Court noted, "the threshold for such evidentiary sufficiency is not high." *Id.* Substantial evidence is "'more than a mere scintilla.' . . . It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consolidated Edison*, 305 U.S. at 229).

Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek v.*

5

*Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). Given this standard, and because a reviewing court may not substitute its judgment for that of the ALJ, "challenges to the sufficiency of the evidence rarely succeed." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

Additionally, the ALJ is expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

**ANALYSIS**

**A. Failure to Consider Fatigue**

Plainse contends that the Commissioner's decision must be remanded because the ALJ failed to consider her complaints of severe fatigue in determining her RFC. She concedes that the ALJ acknowledged that she suffered from rheumatoid arthritis but claims that the ALJ failed to consider her most limiting symptom: her severe fatigue. Dkt. No. 12 at 14. The ALJ's failure to consider this symptom and accommodate it in the RFC, Plainse contends, results in an RFC that is not supported by substantial evidence. It also means that the ALJ failed to build a logical bridge from the evidence to his conclusions. *Id.* at 16.

A fair reading of the ALJ's decision reveals that he fully considered Plainse's testimony that severe fatigue precluded her from gainful employment and rendered her disabled. Plainse's real complaint is not that the ALJ did not consider her complaint of severe fatigue but that he did not

find her testimony that it was debilitating convincing. As to her arthritis in general, the ALJ noted that in August 2014, she was reportedly doing very well and her only complaint was that her feet hurt after an eight-hour shift at her job, "where she is on her feet all the time." R. 18 (citing R. 791). The doctor noted that her foot pain seemed likely related to overuse and her arthritis appeared to be in remission. *Id.* (citing R. 792). Only three months earlier, she had denied fatigue, swelling of her hands or feet, joint pain or swelling, stiffness, muscle weakness or aches, and any loss of strength. R. 591–92. She did complain of fatigue on February 24, 2015, five days after she filed her application for benefits. R. 18 (citing R. 787). The ALJ noted that her exam showed mild joint effusion with normal range of motion. *Id.* (citing R. 789). The following month, Plainse reported some pain in her hands, feet, knees, and elbows but also stated she thought her arthritis was "fairly well controlled." *Id.* (citing R. 777). Her fatigue seemed related, at least in part, to an iron deficiency. *Id.* The ALJ noted she reported she was exercising less but was still running and lifting weights twice a week for 30–60 minutes each time. *Id.* (citing R. 777–78, 1026).

The ALJ noted that, in April 2015, Plainse had a flare-up of her rheumatoid arthritis with marked inflamation of multiple joints after she discontinued her treatment with Enbrel, even though she had a great response to Enbrel and felt better every time she took it. Her doctor recommended treatment with prednisone to get over the acute flare and resumption of Enbrel. In May 2015, exam findings were once again normal. *Id.* (citing R. 861–64). In October 2015, swollen joints were noted over the bilateral wrists, elbows, and shoulders. *Id.* (citing R. 971). Yet, her range of motion was within normal limits and there was no swelling in the bilateral knees, ankles, or feet. In March 2016, she had no signs of active synovitis and she was overall doing very well on her new medication. R. 962. In November 2016, however, swelling and tenderness on palpation of her right

7

elbow and second, third, and fourth metacapophalangeal joints were observed. She had inflamation of her right elbow with difficulty fully extending and scattered discomforts with stiffness in multiple MCP and IP joints. R. 944. In March 2017, she was seen for a follow up and reported doing well once again on her new medication. In December, she had been diagnosed with a ruptured Bakers cyst in her left knee but that condition had improved and nearly resolved. Her doctor indicated she was ambulatory without restriction and no longer taking pain medication. The rest of her joints were doing well without active stiffness, swelling, or pain. R. 19 (citing R. 939). Concerning the specific complaint of fatigue, the ALJ explained:

> As for claimant's complaints of fatigue, the record suggests that her fatigue could have been related to low iron, as the claimant reported an iron supplement had made her feel better (Exhibit 16F, p. 3 [R. 777]; Exhibit 18F, p. 3 [R. 827]). Additionally, she was diagnosed with hyperthyroidism but it is not severe (Exhibit 16F, p. 5 [R. 779]; Exhibit 19F, p. 8, 16–17 [R. 837, 845–46]; Exhibit 25F). In fact, in May of 2015, it was noted as improved (Exhibit 20F, p. 9 [R. 864]). The undersigned also notes that one examiner suggested that the claimant's fatigue could have been caused by inconsistent use of her arthritis medication for a number of years (Exhibit 19F, p. 12 [R. 841]). In April of 2015, the claimant's cardiac work-up demonstrated that she continues to do well (Exhibit 19F, p. 14, 16 [R. 843, 845]). Testing revealed stable cardiac function. The claimant has also continued to work and exercise, despite her allegations of fatigue (Exhibit 16F, p. 3–4 [R. 777–78]; Exhibit 18F, p. 2 [R. 826]; Exhibit 28E).

R. 19.

Summarizing his review of the record, the ALJ noted that, while Plainse did experience flares in her arthritis, they generally corresponded to changes in her medication. The bulk of the record indicated that she had normal or minimal findings on examination. She was reported to be doing well and as of February 2017, she was ambulatory without restrictions and was no longer taking pain medication. R. 19, 939. As recounted by the ALJ and set forth in the record, her left knee, in which she had developed a Baker's cyst, was near full range of motion with no swelling,

8

and she only experienced mild calf discomfort. There was no evidence of synovitis in her upper or lower joints on palpation. R. 19, 840. Based on his examination of Plainse at that time, her rheumatologist, whose earlier opinions are discussed below, concluded she was stable without active disease and her rheumatoid arthritis was "currently in remission." R. 19, 941.

The ALJ's discussion of Plainse's fatigue was thorough, and his finding that it was not so severe as to render her disabled is supported by substantial evidence. This is not to say that the ALJ could not have found otherwise. But a reviewing court may not substitute its judgment for that of the agency it is tasked to review simply because the judge would have found differently. The ALJ explained how Plainse's complaint of fatigue corresponded to changes in medication and diagnoses of iron deficiency and hyperthyroidism. Even with these other factors, Plainse's fatigue complaints were inconsistent. In her January 2016 office visit with Dr. Beulter, for example, while complaining of anxiety, Plainse doesn't even mention fatigue. She complains of the stress of taking 12 credits for her medical assistant degree while working full-time at Planet Fitness, but explains exercise makes her feel better. R. 1025. She explains she likes her career path and her work, but hates to say no to her boss when asked to work extra, not because of fatigue, but because of the stress of doing both. *Id.* At that time, she was running twice a week for exercise, R. 1026, and a year later her doctor reports she is in remission. Given this record, the ALJ's finding that her fatigue was not disabling must stand.

## B. Function-By-Function Assessment

Plainse's argument that the ALJ failed to provide a "function-by-function" assessment of her work-related activities in determining her RFC likewise fails. After careful consideration of the

9

entire record, the ALJ determined that Plainse had the RFC to perform a range of sedentary work, as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). Each of those sections explains:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 1567(a). Plaintiff contends that the ALJ violated SSR 96-8p by failing to include in his written decision a function-by-function assessment of her limitations and that this violation mandates reversal.

The Seventh Circuit addressed this argument in *Zatz v. Astrue*, 346 F. App'x 107 (7th Cir. 2009). In that case, as here, the plaintiff argued that the ALJ had failed to comply with SSR 96-8p because he concluded the plaintiff was able to perform the full range of light work but did not explicitly assess his abilities on a function-by-function basis. The plaintiff's interpretation of SSR 96-8p, the Court noted, "would require an ALJ to provide a narrative discussion assessing the applicant's capacity to perform every single work-related function, including sitting, standing, walking, lifting, carrying, pushing, pulling, stooping, climbing, reaching, handling objects, seeing, hearing, speaking, and understanding instructions." *Id.* at 111. "If this interpretation was correct," the Court explained, "the ALJ's decision would fall short because he did not specifically address Zatz's ability to perform each and every work-related function. Instead, the ALJ considered the medical evidence and concluded that Zatz's only limitation is the inability to lift or carry over 20 pounds." *Id.* Although the Court recognized that the ALJ could have been more explicit in his findings, it rejected the plaintiff's argument that his failure to include an explicit function-by-function assessment in his decision required reversal: "an ALJ need not provide superfluous analysis

10

of irrelevant limitations or relevant limitations about which there is no conflicting medical evidence." *Id.* The Court went on to note that "Zatz has not pointed to any evidence undermining the ALJ's conclusion that he has no limitations other than the inability to lift more than 20 pounds, nor does he even specify what particular functions the ALJ should have, but did not, explicitly assess." *Id.* at 112.

As in *Zatz*, the ALJ in this case addressed the limitations at issue, the primary one of which was fatigue. As the discussion above and the discussion below concerning his assessment of the medical source statements demonstrate, the ALJ considered the evidence on the issue and explained why he concluded that Plainse's fatigue was not so severe as to render her disabled. As to her alleged limitations regarding use of her hands, the ALJ explained:

> The claimant's representative seemed to suggest that the claimant is incapable of working at a job that requires repetitive hand movements, but the evidence suggests that most of the claimant's complaints seem related to her lower extremities. Moreover, even at a time when there was some swelling related to her hands and elbows, the claimant's range of motion was within normal limits. In early 2017, an examiner noted that the claimant's joints were reasonably stable and there was no active stiffness.

R. 19. Even in the questionnaire her physician completed in April 2016, there was no indication of any limitations in her hands. Dr. Koster indicated that there was no persistent inflammation or deformity of her hands that would result in an inability to perform fine or gross movements effectively. R. 876.

Plainse has not pointed to any evidence indicating that she had limitations that the ALJ did not address. Her complaint is that the ALJ failed to explicitly address each function, even those that were not disputed, individually. Her reply to the Commissioner's argument that *Zatz* makes clear that the ALJ's decision need not include an explicit assessment of functions that are not at issue is

11

to point out that *Zatz* is not a published decision and thus may not be cited as authority under the Federal Rules of Appellate Procedure and the circuit's own rules. But this is not a correct statement of the law. The rules actually prohibit a court from prohibiting or restricting the citation of unpublished federal judicial opinions that were issued after January 1, 2007. See Fed. R. App. P. 32.1. *Zatz* was issued in 2009, and thus may be properly cited. Moreover, its reasoning is persuasive regardless of whether it can be cited as authoritative. It makes no sense to remand a case to the ALJ to address issues that were never in dispute.

**C. The ALJ's Listing Discussion**

Plainse next challenges the ALJ's finding that her arthritis did not meet Listing 14.09 for rheumatoid arthritis. The ALJ concluded that Plainse's arthritis did not meet the criteria of the Listing required to be presumed disabled. R. 115–16. Plainse contends, however, that because the ALJ merely stated his conclusion that her impairment did not meet the listing in that section of his decision, reversal for legal error is required. Citing *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2004), Plainse notes that the ALJ's listing discussion "must discuss the listing by name and offer more than a perfunctory analysis of the listing." Dkt. No. 12 at 17. The failure to provide such a discussion, she contends, requires reversal. *See Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2004) ("The omission of any discussion of Robert's impairments in conjunction with the listings frustrates any attempt at judicial review, especially in a case such as this where a claim is made under three different listings. Such a lack of reasoning prevents us from applying the decision structure undergirding disability determinations to a substantive analysis of Robert's impairments."). Here, Plainse contends that the ALJ failed to address the various criteria of the listing for her arthritis.

12

This argument, like the previous one, also elevates form over substance. The fact that the ALJ did not place his discussion of the criteria of the Listing in the same section of his decision that he listed those criteria is not fatal. As long as the discussion of the criteria is adequate, it does not matter where in the decision it appears. *See, e.g.*, *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015) ("[A]s mentioned, the ALJ provided the discussion of Curvin's severe and non-severe impairments, the objective medical evidence, and her credibility directly after step 3 when he determined her RFC. This discussion provides the necessary detail to review the ALJ's step 3 determination in a meaningful way. We do not discount it simply because it appears elsewhere in the decision. To require the ALJ to repeat such a discussion throughout his decision would be redundant."). A reviewing court reads the ALJ's decision as a whole; "it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five." *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir.2004).

As the above discussion shows, the ALJ addressed the listing criteria at step three of his decision as well as in discussing Plainse's RFC. He described the varying findings that shifted with medication changes and expressly noted her doctor's conclusion in March 2017 that her joints were stable and her rheumatoid arthritis was in remission. His findings are more than sufficient to explain why her condition did not meet or medically equal the relevant listing and substantial evidence in the record supports them. To the extent Plainse's complaint is that the ALJ's explanation appears in the wrong section of his written decision, it fails.

**D. Assessment of Treating Source Statements**

Plainse next contends that the ALJ erred in failing to give controlling weight to the opinion of Dr. Koster, her rheumatologist at the Mayo Clinic. Plainse's counsel submitted a "Rheumatoid

13

Arthritis Questionnaire" that Dr. Koster apparently completed and signed on April 28, 2016. R. 875–79. Dr. Koster noted on the form that Plainse was diagnosed with Rheumatoid Arthritis and placed checks indicating that she had persistent inflamation or deformity of her hip, ankle, and elbow, but not her hands. R. 876. He also noted Plainse had congenital cardiac disease that was surgically corrected but required monitoring. R. 877. Dr. Koster checked boxes indicating that Plainse had severe fatigue and malaise, and noted she "has ongoing fatigue/malaise with mild-mod activity." *Id.* He noted she had limitations in household chores due to pain/fatigue and had difficulty concentrating. R. 278. He also stated that her fatigue and malaise would not allow her to work without more than standard breaks in the work day. Finally, he found that she was unable to maintain a normal work-related pace for completing most tasks. With accommodations, Dr. Koster felt that Plainse would be able to perform employment at a reduced capacity. R. 879.

Because Dr. Koster, a rheumatologist, was her treating physician over a period of time, Plainse argues that his opinion should have been given controlling weight—or at least greater weight than the ALJ accorded it. Although the ALJ stated he gave Dr. Koster's opinion "little weight," Plainse contends that in fact the ALJ gave Dr. Koster's opinion no weight at all, as the ALJ's "RFC assessment does not contain any of the limitations found by Dr. Koster . . . ." Dkt. No. 12 at 19.

The mere fact that the ALJ did not adopt what he characterized as Dr. Koster's "extreme limitations" does not mean he did not give his opinion any weight. The ALJ did, after all, limit this twenty-two-year-old woman to only a range of sedentary work. Dr. Koster essentially said that Plainse's fatigue rendered her disabled. He noted that "due to pain/fatigue, she would require frequent breaks to be able to work—wouldn't be able to work at a pace adequate for most tasks."

14

R. 879. The ALJ rejected this opinion because it was "not supported by the record." R. 20. The ALJ explicitly pointed out that, "while the claimant complains of fatigue, the claimant's fatigue has been associated with a number of treatable conditions. Specifically, the claimant at one time had low iron, and the claimant reported an iron supplement made her feel better." *Id.* (citing R. 777, 827). The ALJ also noted she was diagnosed with hyperthyroidism, but it was not severe. *Id.* (citing R. 779, 834, 845–46). And by May 2015, it was noted as improved.

Additionally, as the ALJ noted several times, by March 2017, less than a year later, Plainse was no longer taking any pain medication and her rheumatoid arthritis was considered by Dr. Koster to be in remission. R. 18–19 (citing R. 939–40). She was doing well on her new medication, Orencia, and she was stable without any active disease. R. 941. Plaintiff's efforts to show support for Dr. Koster's opinion essentially amounts to pointing to her own statements about fatigue or malaise, and her own testimony as to how it affected her activities and work. In light of Dr. Koster's March 2017 conclusions, however, and the record as a whole, the ALJ was entitled to reject his opinion that she was unable to perform even sedentary work on a regular full-time basis.

It should also be noted that Dr. Koster's opinion was contradicted by the opinions of the state agency medical consultants who concluded that Plainse was able to meet the requirements of sedentary work. R. 98–99, 116–17. This evidence, in addition to Dr. Koster's own finding that the arthritis was in remission, provides strong support for the ALJ's decision to afford his earlier opinion only little weight. The ALJ complied with the agency regulations and substantial evidence supports his assessment.

**E. Vocational Expert Testimony**

Lastly, Plainse argues that the Commissioner's decision must be reversed because the vocational expert's testimony cannot be relied upon. She contends that the VE's testimony was

15

inconsistent with the Dictionary of Occupational Titles (DOT), and therefore fails to provide a sufficient basis for the ALJ's finding that she could perform other work in the national economy.

But vocational experts are not limited to the DOT or even publicly available sources in general as a basis for their opinions. They are also free to rely upon their own experience in job placement or career counseling in offering opinions to the ALJ. *Biestek*, 139 S. Ct. at 1152–53. Here the ALJ properly relied on the VE's uncontradicted testimony that a hypothetical individual with Plainse's age, education, work experience, and RFC would be able to perform a significant number of jobs in the national economy. The VE was subject to cross-examination by Plainse's attorney. He did not challenge her testimony at the time of the hearing and only now, as an afterthought, contends that it fails to provide a substantial basis for the ALJ's opinion. In light of *Biestek*, this argument clearly fails. As *Biestek* makes clear, "a vocational expert's testimony may count as substantial evidence, even when unaccompanied by supporting data." *Id*. at 1155. In this case, the VE testified that there were more than 500,000 jobs in the national economy that a person with Plaintiff's age, education, work experience, and RFC could perform. This testimony provides a substantial basis for the ALJ's conclusion that Plaintiff is not disabled.

**CONCLUSION**

For the foregoing reasons, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment dismissing the action forthwith.

**SO ORDERED** this   6th   day of September, 2019.

s/ William C. Griesbach  
William C. Griesbach, Chief Judge  
United States District Court